THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES HORTON, Defendant-Appellant.
Third District   No. 3—91—0311

Opinion filed August 19, 1992.

Dan W. Evers, of State Appellate Defender's Office, of Mount Vernon,
for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith
Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of coun-
sel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Defendant, James Horton, was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2)) and sentenced to 28 years in prison.

On appeal, defendant contends: (1) the Illinois first degree murder statute is unconstitutional; (2) his conviction for first degree murder should be reduced to second degree murder; and (3) the prison sentence was excessive. We disagree and affirm the conviction and sentence.

During the early morning hours of January 6, 1990, the defendant and Dorothy Dothard, his live-in girlfriend, were hosting a small party in the defendant's apartment. The guests included the victim, Kenneth Jones, and three other adults. They were all drinking, listening to music, and dancing. Dothard's two children were asleep in the upstairs bedrooms. The trial court, sitting without a jury, heard varying accounts of the events which led up to Jones' murder.

Larry Sullivan testified that he joined the party about 1 a.m. Everyone, including himself, was "boozed up a little bit." Some time after Sullivan arrived, the defendant accused him of coming to the party as a pretext to see Dothard. The two men argued, and the defendant demanded that Sullivan leave the apartment. Sullivan stated that the defendant pushed Sullivan's head back with his hand. Sullivan reacted by punching the defendant in the face four or five times. Robert Burnside and Kenneth Jones broke up the fight by pulling Sullivan away from the defendant. Sullivan, Burnside, Jones, and Ernestine Watkins then left the apartment.

When they were just outside the apartment complex, Sullivan heard Dothard yell from the front door, "Come back, come back. He is trying to kill me." The group then returned to the defendant's apartment.

As Sullivan reentered the apartment, he saw the defendant squatting or sitting in the kitchen with his back to the front door. Sullivan told the defendant that he shouldn't beat on Dothard just because of the argument he had with Sullivan. As Sullivan approached, the defendant turned and then cut Sullivan on the arm and leg with a knife. Sullivan later received 15 stitches in his arm.

After Sullivan was cut, he and Burnside ran out the front door of the apartment. As Sullivan was running away from the building, he saw the defendant chasing Dothard down the sidewalk. Dothard fell, and the defendant got on top of her. She said, "Don't kill me."

Ernestine Watkins testified that during the first altercation, Sullivan called the defendant a "woman beater" and said "I'm a man. Now, I want you to fight a man." The defendant begged Sullivan to leave him alone and to leave the apartment. Sullivan then hit the defendant repeatedly with his fists, and broke a quart beer bottle over the defendant's head. Watkins stated that Sullivan was bigger and clearly had the advantage in the fight. Sullivan is 6 feet 2½ inches tall, and weighed 220 to 230 pounds at the time of the incident. Watkins corroborated Sullivan's testimony that Jones and Burnside pulled Sullivan from defendant. Watkins told Sullivan to leave, and everyone but the defendant and Dothard left the apartment.

As the group was walking in the street, Watkins heard Dothard yell that the defendant was beating her, and for all of them to come back and help her. Watkins then returned to the apartment. She testified that despite Dothard's plea that the defendant was beating her, she saw the defendant was away from Dothard and in the kitchen. Watkins saw the defendant was bleeding and that he was bent over from the first fight with Sullivan. As Sullivan approached, the defendant rose with a knife in his hand and started cutting Sullivan. Watkins said that everyone but the defendant, Dothard, and Jones ran from the building.

Watkins later returned to the apartment to look for Jones. She found him walking down the stairs from the second-floor bedrooms, holding his chest. Jones said, "He had a knife. He cut me." Later, Jones was found dead in the apartment at the bottom of the stairs.

While Watkins was trying to get help for Jones, she saw the defendant chase Dothard across the field, saying, "You're going to get some of it, too."

Watkins quoted Burnside as asking the defendant, while he was still in the apartment, "[W]hy did you want to hurt him? He was trying to help you. Why don't you get Larry [Sullivan]?" Later, after the defendant was found outside the apartment, Watkins also asked the defendant why he killed Jones. He replied, "[C]an't you see what he did to me? Why are you asking me? Can't you see?"

A statement given to police by eight-year-old Nicole Dothard was admitted into evidence by stipulation. Nicole said that she was with her brother in his bedroom when she saw the defendant stab Jones.

Officer Jeffery Kice of the Peoria police department found Jones at the foot of the stairway leading to the second floor of the apartment with a knife wound in his chest. The defendant was found lying at the end of the apartment building.

Officer Craig Ganda recovered a knife from the kitchen sink, and collected blood samples and stains. Kevin Zeeb of the State Police forensic science laboratory testified that blood which was found on the knife, at the top of the stairs, and on a bed cover was consistent with Kenneth Jones' blood. Zeeb's analysis excluded the defendant and Sullivan as being the sources of the blood that was tested.

Dr. Phillip Immesoete performed an autopsy on Jones. He noted three stab wounds: one in the left chest, another in the upper left leg, and a third in the left lateral thigh. Dr. Immesoete testified that the wounds to Jones' leg were consistent with Jones being stabbed from behind.

Dr. Mortimer Beck performed a psychiatric examination of the defendant. Dr. Beck found that the defendant was mildly to moderately mentally retarded. He estimated that the defendant's IQ was 50. Dr. Beck stated, in his opinion, that the ability of a person with below average intelligence to evaluate a stressful situation would be "quite poor." When given a hypothetical question involving the facts of the instant case, Dr. Beck stated that such an individual would be less likely than a person of average intelligence to determine who his attacker was.

The trial court found the defendant guilty of first degree murder. The judge rejected the defendant's contention that he acted in self-defense. The judge found the defendant had no reason to believe that Sullivan was a threat to him after the defendant cut him and Sullivan ran from the apartment. Further, the judge found that the victim, Kenneth Jones, had no weapon, and had not been observed as presenting any threat to the defendant. We agree with the trial judge's findings. The trial judge then sentenced the defendant to 28 years in prison.

On appeal, the defendant first contends that the Illinois first degree murder statute (Ill. Rev. Stat. 1989, ch. 38, par. 9—1 et seq.) is unconstitutional. Defendant claims that the statute violated his right to due process by requiring him to prove, by a preponderance of the evidence, the existence of mitigating factors in order to be convicted of second degree murder rather than first degree murder. The defendant argues that he should not be required to prove an affirmative defense or mitigating factor that is inconsistent with, or would negate, an element of the offense charged. We disagree.

The defendant recognizes that the other four districts of our appellate court have considered and consistently rejected these constitutional challenges to this statute. We choose to follow these well-reasoned decisions. (See, e.g., *People v. Newbern* (4th Dist. 1991), 219 Ill.

App. 3d 333, 579 N.E.2d 583, *appeal denied* (1992), 143 Ill. 2d 645, 587 N.E.2d 1022; *People v. Cook* (5th Dist. 1991), 217 Ill. App. 3d 299, 576 N.E.2d 1242, *appeal denied* (1991), 142 Ill. 2d 657, 584 N.E.2d 133; *People v. Willis* (1st Dist. 1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215, *appeal denied* (1991), 142 Ill. 2d 664, 584 N.E.2d 139; *People v. Hrobowski* (2d Dist. 1991), 216 Ill. App. 3d 711, 575 N.E.2d 1306, *appeal denied* (1991), 142 Ill. 2d 659, 584 N.E.2d 134.) Accordingly, we conclude that the first degree murder statute under which the defendant was convicted is constitutional.

Defendant next contends that his conviction of first degree murder should be reduced to second degree murder. Defendant argues that he proved by a preponderance of the evidence that the mitigating factors of provocation and an unreasonable belief were present when he killed Jones. The defendant argues the evidence showed that when he tried to kill Sullivan by cutting him, he was "acting under a sudden and intense passion resulting from serious provocation" and that he "negligently or accidentally" killed Jones. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(1).) Alternatively, the defendant argues that he unreasonably believed that he had the right to use force in self-defense. Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(2).

The relevant question on review, when faced with a challenge to the sufficiency of the evidence, is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

Serious provocation is statutorily defined as "conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(b).) "The sufficiency of the provocation to cause sudden and intense passion is a matter to be determined by the trier of fact." (*People v. Pruitt* (1987), 154 Ill. App. 3d 22, 32, 506 N.E.2d 696, 702.) The defendant argues that the "severe beating" administered by Sullivan created in him an "intense passion."

■ However, we find from the evidence that the defendant's passion, which was generated by the acts of Sullivan, was ultimately directed toward Jones, who was an absolutely innocent bystander. We also note that Sullivan had already fled the premises after the second altercation with the defendant. With Sullivan no longer presenting a threat to the defendant, we conclude that a rational trier of fact could find beyond a reasonable doubt that the defendant was no longer acting under a sudden and intense passion when he turned his attack upon Jones.

The defendant also argues that his limited mental capacity restricted his ability, as determined by Dr. Beck, to accurately "sort out" his attacker. The defendant, however, was not in imminent danger of death or great bodily harm when he attacked Jones because Sullivan had already left the premises. In addition, we have the statement of Nicole Dothard that the defendant stabbed Jones in the upstairs bedroom. Also, we have the evidence of the knife wounds on the back of Jones' legs. This cumulative evidence strongly suggests that the defendant chased Jones up the stairs and stabbed him in the bedroom. The evidence clearly shows that the defendant was the aggressor.

Therefore, we conclude that the trial court could reasonably find that defendant was no longer acting in self-defense, and that he did not believe, even unreasonably, that he was attacking Sullivan rather than Jones. Further, we find that no evidence was presented that Jones was ever a threat to the defendant or that Jones was armed in any way.

Finally, the defendant contends that the trial court's sentence in excess of the minimum term of 20 years was an abuse of discretion. Defendant notes the absence of factors in aggravation, and further argues that the trial court failed to consider several significant factors in mitigation. We disagree.

A sentence determination lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883-84.

The trial judge noted at the sentencing hearing that he had considered the presentence investigation report, the evidence offered in aggravation and mitigation, as well as the sentencing recommendations made by defense counsel and the State. We note that the 28-year prison sentence imposed by the trial court falls within the lower sentencing range of 20 to 60 years for a conviction of first degree murder. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).

Therefore, we conclude, based upon our review of the record, which includes the arguments of defendant's counsel and the statements of the trial judge expressed at the sentencing hearing, that the trial court did not abuse its discretion in imposing the defendant's 28-year prison sentence.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HAASE and STOUDER, JJ., concur.